<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| CHRISTINE ESTERLY, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> COMMISSIONER OF SOCIAL : <br> SECURITY, : <br> : <br> Defendant. : | Case No. 2:13-cv-02954 (SDW) <br><br> **OPINION** <br><br> June 30, 2014 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Christine Esterly's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security (the "Commissioner"), with respect to an administrative law judge's denial of Plaintiff's claim for Social Security Disability Insurance Benefits ("SSDI") pursuant to 42 U.S.C. § 405(g).  This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.  This court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(g).  Venue is proper under 28 U.S.C. § 1391(b).  For the reasons stated herein, this Court **REMANDS** this matter for further review.

I.  <u>FACTUAL AND PROCEDURAL HISTORY</u>

A.  **Facts**

Plaintiff was born on March 3, 1964, is 50 years old, and has a tenth grade education. (R. at 297, 344.)  She is single, resides in a shelter in Jersey City, NJ, and is unemployed. (R. at 12-13, 344; Pl.'s Br. 15.)  Her last gainful employment was over fifteen (15) years ago when Plaintiff

worked as a waitress in various establishments over the course of several years. (R. at 163-175.) Plaintiff receives $210.00 per month in welfare benefits and also receives food stamps. (R. at 156-57.) Plaintiff alleges she has been unable to work in any capacity since September 30, 1996 because of mental and physical impairments. (R. at 159-60.) These impairments include an impaired left shoulder, post-traumatic stress disorder ("PTSD"), obesity,[1] Hepatitis C, anxiety, depression, and history of alcohol abuse. (R. at 13.) She filed an application for SSDI on January 14, 2010, alleging a disability onset date of September 30, 1996. (R. at 10.)

### 1.  *Medical History*

Plaintiff suffers from a left shoulder injury and post-traumatic stress disorder ("PTSD") relating to an incident in which she was shot by an acquaintance. (R. at 64-67.) Around the age of 17, Plaintiff began working as a sex worker after being introduced to the industry through a male friend. (R. at 64-67.) Plaintiff testified this male would later shoot her with a shotgun in her dominant the left arm. (R. at 64-67.) This gunshot wound has resulted in scarring and tissue loss at the site of the wound. (R. at 344-45.) While her left arm is not as flexible as her right and she suffers some loss of strength, she does not have any difficulty using either of her hands. (R. 345-46.) Additionally, Plaintiff has a restricted range of motion in her right ankle. (R. at 344.) Plaintiff slipped on ice in 2009 and had to undergo surgery for the placement of a plate in it. (R. at 344.) This injury causes her to walk with a slight antalgic gait. (R. at 345.)

Furthermore, Plaintiff also has several mental health disorders. She suffers from PTSD, anxiety, depression, and paranoia. (R. at 355.) She maintains that the PTSD stems from the gunshot incident from her past. (R. at 53.) Plaintiff has relied on, *inter alia*, the following drugs to treat symptoms from these disorders: Xanax, Ativan, Enalirpil, and Motrin (R. at 377-384.)

---

[1] Plaintiff is 5'4 and weighed close to 195 pounds during the relevant time period. (R. at 335.)

2

While Plaintiff is not under formal psychiatric treatment, she does periodically visit the emergency room in order to obtain renewed prescriptions for Xanax. (R. at 234-36, 267-68, 279-81.) Medical records indicate that Plaintiff visited the emergency room at Christ's Hospital on at least four occasions between November 11, 2009, and January 21, 2010, to seek prescriptions for Xanax to treat her anxiety. (R. at 234-36, 267-68, 279-81.)

Plaintiff also has a history of substance abuse. At the underlying hearing, Plaintiff testified that she has previously used intravenous drugs, cocaine, crack, and had periods of heavy alcohol use. (R. at 64-68.) She also appeared at a consultation exam with Dr. Anthony J. Candela, Ph.D. ("Dr. Candela") under the influence of alcohol.[2] (R. at 355.)

### 2. Medical Consultants

As part of the SSDI claim process, Plaintiff's medical records were reviewed by several independent medical consultants. On July 22, 2010, Dr. Robert Starace, Ph.D. ("Dr. Starace"), conducted a psychological evaluation of Plaintiff's disability submissions. (R. at 330.). Dr. Starace noted that there were insufficient medical records to assess the severity or duration of Plaintiff's alleged impairments. (R. at 330.) Further, Dr. Starace noted that Plaintiff was not under any formal psychological treatment. (R. at 330.) As such, he could not make a psychological determination about her. (R. at 330.) Also in July 2010, Dr. Jose Rabelo, M.D. submitted a medical analysis that concluded Plaintiff's Hepatitis C and hypertension conditions were not severe because there was no evidence submitted of organ damage from either condition. (R. at 332.)

On July 30, 2010, Dr. Ruby Clark, M.D. reviewed Plaintiff's medical records and determined that Plaintiff's physical conditions were not severe and that her medical records were insufficient to support a claim for disability. (R. at 335.) Additionally, in December 2010, Dr.

---

[2] When Dr. Candela asked Plaintiff if she had been drinking prior to the medical evaluation, she responded, "If you had my life you would be drinking too." (R. at 17.)

Ibrahim Housri, M.D. ("Dr. Housri"), in connection with reconsideration of Plaintiff's SSDI application after it was denied initially, reviewed the previous medical findings and determined that Plaintiff neither had any changes in her medical condition nor had she submitted any additional medical evidence. (R. at 352.)  Thus, he affirmed the initial medical conclusions. (R. at 352.)

On December 16, 2010, Plaintiff met with Dr. Candela for an in-person evaluation. (R. at 354.)  At the meeting, Dr. Candela noted Plaintiff was inebriated and slurred her words. (R. at 355.)  He reported that Plaintiff was functioning on a low average level of intellectual ability and diagnosed her with, *inter alia*, chronic alcoholism, panic attacks, depression, PTSD, Hepatitis C, and a gunshot wound to her left arm. (R. at 355-56.)

On February 2, 2011, Dr. Joseph Bencivenne ("Dr. Bencivenne") conducted a psychiatric review and residual function capacity ("RFC") assessment based upon Plaintiff's medical evaluation records (R. at 359-77.)  Dr. Bencivenne determined that Plaintiff was suffering from a panic disorder, depression, and alcoholism, but that these disorders did not fully disable her. (R. at 359-377.)  Dr. Bencivenne found that the disorders markedly limited Plaintiff's ability to understand, remember, and execute detailed instructions, but found that she was only moderately impaired in social functioning and maintaining focus. (R. at 373-375.)  Therefore, Dr. Bencivenne concluded that Plaintiff was able to "perform simple routine functions, relate, and adapt to a low demand work setting." (R. at 375.)

### 3. SSDI Hearing and ALJ Decision

An evidentiary hearing was conducted to assess Plaintiff's eligibility for SSDI on January 27, 2012 after her claim was denied both initially and upon reconsideration. (R. at 46-86.)  At the supplemental hearing on June 12, 2012, the ALJ heard testimony from Plaintiff and Dr. Pat Green ("Dr. Green"), an independent vocational expert. (R. at 73.)  The ALJ submitted multiple

4

hypotheticals to Dr. Green in order to determine Plaintiff's ability to perform jobs that existed in the national economy. (R. at 84.) These hypotheticals included numerous exertional impairments related to Plaintiff's left shoulder impairment as well as several non-exertional impairments. The ALJ questioned Dr. Green on whether jobs existed in the economy for individuals with Plaintiff's RFC and limitations to perform "simple routine, low-stress jobs; jobs that involve no contact with the general public, and low contact with co-workers and supervisors." (R. at 76.) Dr. Green indicated there were such jobs available.[3] (R. at 76.) But when the ALJ added to the hypothetical an individual's difficulty in maintaining concentration, persistence, and pace, "whether it be due to panic attacks, depression, pain, basically for any reason[,]" Dr. Green stated no job would be available to an individual with those impairments. (R. at 79.) The ALJ left the record open after the initial hearing to obtain a post-hearing consultative examination. (R. at 10.)

Thereafter on March 3, 2012, Plaintiff presented for a mental evaluation by Dr. Gerard A. Figurelli, Ph.D ("Dr. Figurelli"). (R. at 385-92.) Dr. Figurelli spoke with Plaintiff about her various symptoms and medical history. He did not find it possible to ascertain the severity of her medical conditions during the examination, but he determined that her symptoms were consistent with the prior diagnoses of anxiety, depression, PTSD, and alcohol abuse. (R. at 391.) A supplemental hearing was subsequently conducted at which Plaintiff appeared and testified. (R. at 26-40.) Plaintiff requested that another vocational expert appear and testify, but the ALJ concluded that it was not necessary as Dr. Green had been examined and cross-examined at the initial hearing. (R. at 10.)

Following the supplemental hearing, the ALJ returned an unfavorable decision determining that Plaintiff was not disabled as defined under § 1614(a)(3)(A) of the Social Security Act (the

---

[3] Dr. Green identified three jobs that Plaintiff could perform: assembler of small products; garment folder; and hand packager. (R. at 76-77.)

5

"Act". (R. at 21.)  Of particular importance here, the ALJ determined at step two that Plaintiff had the following severe impairments: depressive disorder, not otherwise specified; panic disorder; PTSD; history of alcohol abuse; status post gunshot wound in the left upper extremity; Hepatitis C; and obesity. (R. at 13.)  At step three, the ALJ concluded that her impairments were not medically equal to the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Finally at step five, the ALJ determined that an adequate number of jobs existed in the national economy that Plaintiff could perform. (R. at 18-20.)

### B. Procedural History

Plaintiff's SSDI application was filed on January 14, 2010. (R. at 10.)  It was initially denied on July 30, 2010, and again upon reconsideration on February 2, 2011. (R. at 10.) Following an initial and a supplemental hearing, the ALJ issued an unfavorable decision on July 24, 2012 finding that Plaintiff was not disabled. (R. at 7-9.)  On March 5, 2013, the Social Security Administration ("SSA") denied Plaintiff's request for review of the ALJ's decision. (Pl.'s Br. at 2.)  This appeal was timely filed on May 9, 2013. (Dkt. No. 1.)

## II. LEGAL STANDARD

In social security appeals, district courts have plenary review of the legal issues decided by ALJs.  *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  The court's review of the ALJ's factual findings, however, is limited to determining whether there is substantial evidence to support those conclusions.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938)).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz*, 244 F. App'x. at 479 (citing *Hartranft*, 181 F.3d at 360)). The court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D.Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984).

## III. DISCUSSION

### A. SSDI Test

An individual will be considered disabled under the Social Security Act (the "Act") if he or she is unable to "engage in any substantial gainful activity [("SGA")] by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically accepted clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." *Id*.

In order to establish a prima facie case of disability under the Act, a claimant bears the burden of demonstrating: (1) that she was unable to engage in SGA by reason of physical or mental impairment that could have been expected to last for a continuous period of at least twelve months, and (2) that the existence of such impairment was demonstrated by evidence supported by medically acceptable clinical and laboratory techniques. *See* 42 U.S.C. § 1382c (a)(3).

In determining disability, the Social Security Administration ("SSA") utilizes a five-step sequential analysis. *See* 20 C.F.R. § 416.920; *see also Cruz*, 244 F. App'x. at 479. A determination of non-disability at steps one, two, four, or five in the five-step analysis ends the inquiry. 20 C.F.R. § 416.920. A determination of disability at steps three and five results in a finding of disability.

8

*Id.* If an affirmative answer is determined at steps one, two, or four, the SSA proceeds to the next step in the analysis. *See id.*

At step one, the Commissioner must determine whether the claimant is engaging in SGA. *See* 20 C.F.R. § 416.920(a)(4)(i). SGA is defined as work activity that is significant and done for payment. 20 C.F.R. § 416.910. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 416.972(a). "Gainful work activity" is work that is usually done for profit, whether or not profit is realized. 20 C.F.R. § 416.972(b). If an individual engages in SGA, he is not disabled regardless of the severity of his physical or mental impairments. 20 C.F.R. § 416.920(a)(4)(i). If the individual is not engaging in SGA, the Commissioner proceeds to the next step. 20 C.F.R. § 416.920.

At step two, the Commissioner must determine whether the claimant has a medically determinable severe impairment or a combination of severe impairments. 20 C.F.R. § 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. *See id.* An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. § 416.921. If the claimant does not have a severe impairment or severe combination of impairments, he is not disabled. 20 C.F.R. § 416.920(c). If the claimant does have a severe impairment or severe combination of impairments, the analysis proceeds to the third step. 20 C.F.R. § 416.920.

At step three, the Commissioner must determine whether the claimant's impairment or combination of impairments meets the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 416.920(d), 416.925, 416.926. If the claimant's impairment

9

or combination of impairments meets the criteria of a listing and the duration requirement, the claimant is disabled. 20 C.F.R. § 416.920(d). If the claimant's impairment or combination of impairments do not, the analysis proceeds to the next step. 20 C.F.R. § 416.920(e).

At step four, the Commissioner must determine whether the claimant has the residual function capacity ("RFC") to perform the requirements of his past relevant work. 20 C.F.R. § 416.920(f). In making this determination, the Commissioner must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 416.920(e), 416.945. "Past relevant work" means work performed within the fifteen years prior to the date that the disability must be established. 20 C.F.R. § 416.960(b)(1). If the claimant has the RFC to perform his past relevant work, the claimant is not disabled. 20 C.F.R. § 416.960(b)(3). If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth step. *See* 20 C.F.R. § 416.920(a)(4)(iv).

At step five, the Commissioner must determine whether the claimant is able to do any other work considering his RFC, age, education, and work experience. *See* 20 C.F.R. § 416.920(g). The claimant bears the burden of persuasion in the first four steps. *See Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 763 (3d Cir. 2009). If the claimant establishes that his impairment prevents him from performing any of his past work, the burden shifts to the Commissioner at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. *See* 20 C.F.R. § 416.920(g); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987).

### B. The ALJ's Step Three Determination

Plaintiff argues that the ALJ erred in step three of the sequential analysis by failing to consider if the combined effects of her impairments are medically equal to the listed impairments

of 20 C.F.R. Part 404, Subpart P, Appendix 1. (Pl.'s Br. 11-16.) Additionally, Plaintiff maintains that the ALJ failed to properly analyze her obesity impairment at step three. (Pl.'s Br. 16-21.)

The ALJ first noted at step three that no treating or examining physician found that Plaintiff's impairments equaled any listed impairment; he also determined that the evidence did not demonstrate that Plaintiff's impairments were medically equivalent to a listed impairment. (R. at 13.) The ALJ went on to state that he gave "particular consideration" to Plaintiff's mental disorders and substance abuse history, which led him to conclude that, "despite her combined impairments," her impairments did not medically equal a listed impairment. (R. at 13.) There is no discussion, however, of the combined effects of her impairments. While there is a discussion of how individual impairments affect Plaintiff, the ALJ's decision is devoid of an analysis of the interplay between her various physical and non-physical impairments. Without such an analysis, the ALJ's decision cannot stand. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000) (reversing and remanding for the ALJ to discuss why the claimant's combination of impairments was not medically equivalent to one of the listed impairments). Although the ALJ may have considered Plaintiff's impairments in combination, without the benefit of a fully explained decision, this Court cannot assess whether the ALJ properly conducted the analysis at step three. *See Diaz v. Comm'r of Soc. Sec. Admin.*, 577 F.3d 500, 504 (3d Cir. 2009). Despite the ALJ's conclusory statement that the Plaintiff's "combined impairments" are not medically equivalent to a listed impairment, in the absence of an adequately detailed decision, this Court cannot discern if the ALJ did, in fact, consider Plaintiff's impairments in combination, and is therefore unable to conduct meaningful judicial review of his decision. *See Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 2005) (stating that "an administrative decision should be accompanied

by a clear and satisfactory explication of the basis on which it rests" and without it, a reviewing court cannot "perform its statutory function of judicial review").

Further, the ALJ failed to include any discussion of Plaintiff's obesity impairment. Although the ALJ found at step two that Plaintiff's obesity was a severe impairment, he was silent as to whether it, either individually or in combination with her other impairments, was medically equivalent to a listed impairment. (R. at 13-15.) Indeed, where, as here, the ALJ finds at step two that obesity is a severe impairment, the SSA instructs ALJs to analyze obesity in the medically equivalent analysis at step three. (SSR 00-3P, 2000 SSR LEXIS 5); *see also Diaz*, 577 F. 3d at 504,503 ("[A]n ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step.").

The Commissioner's reliance on *Rutherford v. Barnhart*, 399 F.3d 546 (3d Cir. 2005) in arguing that the ALJ was not under an obligation to discuss Plaintiff's obesity is misplaced. (Def.'s Br. 9.) In *Rutherford*, the plaintiff's obesity was not found to be an impairment at step two and thus, the Third Circuit found that it was not erroneous for the ALJ to have not discussed it. 399 F.3d. at 552-53. Contrarily, the ALJ here explicitly found Plaintiff's obesity to be an impairment. (R. at 13.) Under such circumstances, the ALJ must analyze and discuss the claimant's disability at step three. *Diaz*, 577 F.3d at 503-04. Accordingly, on remand, the ALJ should analyze and discuss all of Plaintiff's impairments in combination, including Plaintiff's obesity impairment.

### C. The ALJ's Step Five Determination

Plaintiff argues that the Commissioner failed to meet her burden of showing the existence of jobs existing in substantial numbers in the national economy that she can perform. (Pl.'s Br. 21-36.) Specifically, Plaintiff contends the hypotheticals the ALJ posed to the testifying vocational

expert, Dr. Green, did not include all of plaintiff's credibly established mental impairments. (*Id*. 31.) As such, Plaintiff asserts that Dr. Green's answers to the ALJ's hypotheticals are incompetent to constitute substantial evidence supporting the Commissioner's step five burden of showing the existence of jobs that Plaintiff can perform. (*Id*.)

It is well-settled that ALJs may pose hypothetical questions to vocational experts to aid the ALJ in determining an individual's occupational base. *See Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). The vocational experts' answers constitute substantive evidence, however, only when the hypothetical questions accurately portray the claimant's physical and mental impairments. *Id*. Thus, for the vocational experts' answers to be substantively considered, the hypothetical questions must reflect all of the claimant's physical and mental impairments. *Burns v. Barnhart*, 312 F.3d 113, 123 (3rd Cir. 2002).

The hypothetical questions posed to Dr. Green do not support the conclusion that substantial jobs exist in the national economy that Plaintiff can perform given her RFC, age, education, and work experience. The ALJ asked Dr. Green that if a person had Plaintiff's age, education, work experience and RFC with specified limitations, would jobs in the national economy be available for that person to perform. (R. at 76.) Dr. Green responded in the affirmative. Dr. Green did so again when the ALJ asked Dr. Green to further assume that the person had a slight restriction on his or her ability to elevate the dominate shoulder. (R. at 78.) When the ALJ asked Dr. Green to assume further that the "person had difficulty maintaining her concentration, persistence, and pace . . . due to panic attacks, depression, [or] pain[,]" Dr. Green responded that the person would not be able to do any job. (R. at 79.) Dr. Green confirmed his answer in a follow up question from the ALJ. (R. at 79.) Nevertheless, the ALJ determined at step five that sufficient jobs exist in the national economy that Plaintiff could perform. (R. at 20.)

Based on Dr. Green's testimony and the evidence of record, the ALJ's step five determination was erroneous. The ALJ determined at step two that Plaintiff suffered from, *inter alia*, a depressive disorder and a panic disorder. (R. at 13.) But yet, the ALJ seems to have disregarded Dr. Green's testimony that a person with those disorders could not perform any work. Indeed, the decision fails to reconcile Dr. Green's testimony with the ALJ's conclusion that jobs exist that Plaintiff can perform; rather, the ALJ relies upon Dr. Green's testimony to find that an adequate number of jobs exist that Plaintiff is capable of performing. (R. at 21.) Given Plaintiff's depressive and panic disorders and Dr. Green's testimony that there are not any jobs a person with these disorders could perform if the disorders affected the individual's ability to maintain concentration, persistence, and pace, the ALJ needed to adduce evidence showing how these disorders affected Plaintiff's concentration, persistence, and pace. The ALJ appears to have recognized his duty to have done so because after the hearing, he left the record open to obtain a new psychiatric consultative examination, which was conducted by Dr. Figurelli. (R. at 19.) Dr. Figurelli's report did not resolve this issue, however, as he concluded that "[i]t was not possible for [him] to ascertain the nature or severity of any medical conditions that [Plaintiff] may experience." (R. at 391.)

Stated differently, the ALJ kept the record open to obtain evidence to address a particular issue, but the evidence obtained did not resolve it. Resolution of this issue is particularly important because the burden rests with the Commissioner to demonstrate that a substantial number of jobs that a plaintiff can perform exist. *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). Furthermore, an ALJ's decision cannot be affirmed if he "ignores, or fails to resolve, a conflict created by countervailing evidence." *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting, *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). The evidence of record

does not show whether Plaintiff's depressive disorder and/or panic disorder affected her concentration, persistence and pace in performing employment activities and thus, the Commissioner has failed to sustain her burden of proving that a substantial number of jobs exist that Plaintiff can perform. Therefore, this matter must be remanded.

## IV. CONCLUSION

For the foregoing reasons, this Court finds that substantial evidence does not support the ALJ's decision. Accordingly, this Court **REMANDS** this matter to the ALJ for further proceedings consistent with this Opinion.

s/Susan D. Wigenton, U.S.D.J.

Orig: Clerk
Cc: Parties